UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| TRACEY L. BALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17-cv-00006-SEB-TAB |
| | ) |
| NANCY A. BERRYHILL Acting Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION
ON BRIEF IN SUPPORT OF APPEAL**

**I.    Introduction**

Plaintiff Tracey L. Ball contends that she is disabled within the meaning of the Social Security Act as a result of a mental impairment caused by her fall off a motorcycle in August 2003. The Administrative Law Judge disagreed, and denied her claim for benefits following a hearing. The Appeals Council remanded the case and, following a second hearing, the ALJ again found Ball was not disabled. The Appeals Council denied Ball's request for review, and this appeal followed. For the reasons set forth below, the Magistrate Judge concludes that the Commissioner's decision should be reversed and that Ball's claim for benefits should be remanded for reconsideration.

**II.    Background**

At step one of the sequential evaluation process, the ALJ found that Ball had not engaged in substantial gainful activity during the relevant period between her alleged onset date, April 15, 2012, and the expiration of her insured status, September 20, 2013. At step two, the ALJ found

1

that Ball has the severe impairments of a history of traumatic brain injury due to the August 2013 motorcycle accident and secondary cognitive disorder. At step three, the ALJ found that Ball did not have an impairment or combination of impairments, severe and non-severe, singly and in combination, that met or medically equaled any of the conditions included in the Listing of Impairments.

For steps four and five, the ALJ determined that Ball has the residual functional capacity to perform a full range of work at all exertional levels but that she has the following non-exertional limitations: (1) she is limited to simple, routine, repetitive tasks; (2) she is unable to perform at a production-rate pace, such as is generally associated with assembly-line work, but she can perform goal-oriented work, such as is generally associated with jobs like an office cleaner; (3) she is limited to making simple work-related decisions; (4) she is limited to only occasional and superficial interaction with supervisors and co-workers; (5) she is limited to no interaction with the public; and (6) she can tolerate only occasional changes in a routine work setting.

Step four was irrelevant because the ALJ found that Ball has no past relevant work. At step five, relying on the testimony of a vocational expert who identified three jobs that a person with Ball's vocational characteristics and the above RFC limitations could perform, the ALJ found that a significant number of jobs exist in the national economy for Ball. Therefore, the ALJ found that she is not disabled.

### III.   Discussion

####   1.   Erroneous evaluation of Ball's moderate deficiencies of concentration, persistence, or pace.

Ball argues that the ALJ erred by failing to include specific limitations of concentration, persistence, or pace in his residual functional capacity assessment and in his hypothetical

2

question to the vocational expert.  The ALJ's finding that Ball has moderate difficulties in concentration, persistence, or pace [R. at 16, 21] was based on (1) the opinions of the state agency's psychological consultants, Dr. J. Gange, Ph.D., and Dr. William A. Shipley, Ph. D., which were expressed in a Mental Residual Functional Capacity Assessment Form ("MRFCA"), [R. at 479 (Dr. Gange's MRFCA), 501 (Dr. Shipley's affirmance of the MRFCA)]; (2) certain opinions of Dr. Robert Kurzhals, Ph. D., a non-agency consulting examiner [R. at 20-21, 469]; and (3) Ball's activities of daily living.  [R. at 16, 20.]

Of the eleven functions listed under the "Sustained Concentration and Persistence" section of the MRFCA, Dr. Gange rated Ball as "Moderately Limited" in two:  the ability to carry out detailed instructions and the ability to maintain attention and concentration for extended periods.  [R. at 479.]  He found that she was "Not Significantly Limited" in the other nine functions.  *Id*.  Explaining his ratings in the narrative section of the form, Dr. Gange wrote that Ball can (1) understand, remember, and carry-out simple tasks, (2) relate on at least a superficial basis on an ongoing basis with co-workers and supervisors, (3) attend to tasks for sufficient periods of time to complete simple tasks, and (4) manage the stresses involved with simple/unskilled work-like tasks.  [R. at 481.]  Dr. Kurzhals opined that Ball's concentration and attention were impaired but that she was able to understand and follow simple instructions.  [R. at 471.]  He wrote that she was "considerably distractible" during his examination and noted that she was fired from her job due to being overly friendly with customers and not getting her work done.  [R. at 472.]  The ALJ found that Ball's activities of daily living are inconsistent with more than moderate difficulties in concentration, persistence, or pace.  [R. at 16, 20.]

Citing *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016), *Varga v. Colvin*, 794 F.3d 809, 813-16 (7th Cir. 2015), and *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014), Ball argues that the ALJ's RFC elimination of production- or fast-pace work is not a proxy or

3

substitute for moderate deficiencies in concentration, persistence, or pace and, therefore, his failure to include specific concentration, persistence, or pace limitations in his hypothetical to the vocational expert constitutes harmful legal error.  However, in the functional category of concentration, persistence, or pace, Drs. Gange and Shipley found that Ball was moderately limited only in her abilities to carry out detailed instructions and to maintain attention and concentration for extended periods.  They explained that, with these limitations, she nonetheless has the functional capacity to understand, remember, and carry out "simple tasks" and to attend to tasks for sufficient periods of time to complete them.  Thus, the the state-agency physicians' MRFCA narrative explanation adequately translated their summary check-box concentration, persistence, or pace findings into a functional assessment that the ALJ reasonably incorporated into his hypothetical to the vocational expert by limiting Ball to simple, routine, and repetitive tasks.  [R. at 43-44.]  See *Varga*, 794 F.3d at 816; *Yurt*, 758 F.3d at 858; and *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619-20.  The state-agency experts' translation of Ball's functional deficiencies into functional limitations provides substantial evidence supporting the ALJ's hypothetical.

     The ALJ also limited Ball to less than a production-rate pace, only occasional and superficial interaction with supervisors and coworkers, and no interaction with the public.  Although he did not specifically tie these additional limitations to deficiencies of concentration, persistence, or pace, they do address evidence of Ball's distractibility, impaired judgment, and slower work pace which were noted in reports by Dr. Kurzhals and Ball's former manager.  Dr. Kurzhals noted that Ball was "considerably distractible" during his examination, but without further explanation or opinion regarding this trait's functional impact in the workplace.  [R. at 471, 472.]  He also concluded that her judgment was impaired "as evidenced by her recently being fired from her job due to being overly friendly with customers and not getting her work

4

done." [R. at 472.] Ball's former manager reported that she was "very easily distracted" and and would not stay focused on her job when someone talked to her and when she talked a lot with customers. [R. at 318.] By limiting Ball's opportunities for distraction and her pace of work, the ALJ adequately addressed the specific triggers that caused the deficiencies in concentration, persistence, or pace that he found.

### 2. Failure to assign relational weights to medical source opinions.

Ball argues that the Court cannot review the ALJ's decision because, while he assigned "some weight" to Dr. Kurzhals' and the state-agency psychologists' opinions, he did not identify the opinions to which he assigned the "most weight" or explain the reasons that he did so. Morever, Ball argues, while the ALJ discussed Dr. Tureen's and Dr. Greenwood's statements, he did not assign any weights to them.

The ALJ wrote that he gave "some weight" to Dr. Kurzhals' objective examination findings but that he found that the doctor's opinions regarding functional limitations—the subject directly relevant to Ball's RFC—lacked supporting explanations and were contradicted by her activities of daily living. [R. at 21.] While also assigning "some weight" to the state-agency psychologists' opinions, the ALJ rejected only their opinion that Ball has moderate difficulties with activities of daily living, finding instead that she has no limitation in that functional area. He clearly relied more on the state-agency physicians' opinions and indicated his reasons for doing so. Although the ALJ did not explicitly assign weights to the statements of Drs. Tureen and Greenwood, he specifically noted their findings that supported his RFC definition. For example, Dr. Tureen opined that Ball could probably perform "relatively routine" work in a full-time setting, as long as she does not have to make major decisions independently. [R. at 19.] Dr. Tureen also did not detect major problems with attention and concentration. *Id.* Dr. Greenwood opined that Ball could probably eventually work in a full-time setting, again, if it were

5

"relatively routine" and did not involve major independent decision-making. *Id.* Dr. Tureen's opinions date from 2005 and 2006 and Dr. Greenwood's opinions date from 2006, six years before Ball's alleged onset date and the dates of Drs. Kurzhals', Gange's, and Shipley's opinions. While the ALJ did not explicitly assign relative weights to the opinions of Drs. Tureen and Greenwood, the Court adequately discerns the path of his reasoning:  he gave greater weight to the more recent opinions of the state-agency psychologists and the consistent functional opinions of Drs. Tureen and Greenwood, particularly their opinions that Ball has the capacity to perform relatively routine full-time work that does not require major independent decisions.[1]

Ball has not shown that a remand for more explicit articulation of the weights assigned to the expert opinions would likely produce a different assessment of the relative weights than is presently discernable in the ALJ's decision.

### 3. Assessment of activities of daily living.

While thus far any flaws in the ALJ's analysis fall short of requiring a remand, the ALJ's opinion falters significantly down the stretch. This is noticeably so in the ALJ's assessment of Ball's activities of daily living. The ALJ found that the fact that Ball can perform her described activities of daily living "is not supportive of a finding of disability." [R. at 20.] He wrote that "the physical and mental capabilities requisite to performing many of [her listed activities], as well as the social interactions, replicate those necessary for obtaining and maintaining employment." [R. at 20.] Equating a claimant's activities of daily living with the capacity to fulfill the demands of full-time work requires the most careful analysis and supporting explanation. See *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Gentle v. Barnhart*, 430

---

[1] Ball argues that the ALJ's RFC limitation to "routine" work does not cover the "relatively routine" work that Drs. Tureen and Greenwood opined that she can perform, but she does not explain why that is so. In any case, it is reasonable to construe a limitation to "routine" work as being more restrictive than a limitation to "relatively routine" work.

6

F.3d 865, 867 (7th Cir. 2005) (warning against a "casual equating of household work to work in the labor market"). The ALJ's discussion of Ball's activities of daily living does not demonstrate the level of analysis that is required to support his bare conclusion that her activities are inconsistent with disability. There must be some explanation that correlates specific activities with the demands of employment in a workplace setting. This crucial analysis is lacking, and this omission is too significant to overlook. Therefore, Ball's claim should be remanded for reconsideration of her daily activities and articulation of the bases supporting any conclusions regarding her ability to perform competitive work.

    **4.**    **Credibility findings.**

The ALJ's credibility findings likewise are not adequately supported in the record or otherwise sufficiently explained.

    **a.**    **Conservative and routine treatments.** The ALJ found that "the claimant's treatment was conservative and routine in nature, and did not reflect ongoing treatment that would be expected with debilitating conditions. If the claimant's conditions were disabling, it would be expected that her treatment would be more aggressive and the medical evidence of record would document more serious signs and symptoms." [R. at 20.] The problem here is that the ALJ did not explore what other treatment Ball should have sought for her permanent residuals from her 2003 traumatic brain injury. Nor did the ALJ address whether these treatments―whatever they were―were affordable or otherwise available to Ball. Moreover, the ALJ cited no expert medical evidence in the record to support his conclusory findings. Thus, he made a medical judgment for which he was not qualified, and his findings regarding her treatment are not supported by substantial evidence.

    **b.**    **Seeking and receiving unemployment benefits.** The ALJ also erroneously found that her credibility was undermined by her attempts to obtain employment and her

7

successful claim for unemployment benefits after her alleged onset date. The ALJ construes this as assertions by Ball that she was ready and able to work. [R. at 20.] However, as Ball points out, the ALJ concluded that her past relevant work does not meet their criteria for substantial gainful activity. [Filing No. 17, at ECF p. 11]. While the receipt of unemployment benefits can imply the ability to work, *Cole v. Colvin*, 831 F.3d 411, 415 (7th Cir. 2016), the ALJ's brief analysis hardly supports this conclusion.

What the evidence does show is that Ball attempted to work at the Dollar Store, which was not done at the substantial gainful activity level. This demonstrates a desire to work, not to be disabled. Moreover, the report from Ball's employer shows she had significant problems in doing any work. [R. at 317-19.] In fact, the employer told Ball to work faster and stay focused. [R. at 319.] The employer terminated Ball and would not rehire her. This record does not support holding against Ball the fact that she received unemployment benefits.

### 5. Outdated jobs information.

There is one final concern with the ALJ's opinion. Ball argues that, because the *Dictionary of Occupational Titles* ("*D.O.T.*") has been superseded by the *Occupational Information Network* ("*O\*NET*"), *Alaura v. Colvin*, 797 F.3d 503, 507 (7th Cir. 2015), the ALJ erred by relying on the vocational expert's identification of three jobs that she can perform which was based on outdated *D.O.T.* data regarding the skill level of those jobs. The *D.O.T.* rates all three of the jobs as unskilled—as required by the ALJ's defined RFC and his hypothetical—but the *O\*NET* rates two of the jobs as skilled and rates the third as straddling the skilled-unskilled range, potentially making all three jobs non-compliant.

While the Department of Labor has replaced the *D.O.T.* with the *O\*NET*, the Social Security Administration has declined to adopt the *O\*NET* for disability determinations, finding

8

that it lacks the detailed criteria of work that are critical for claims adjudication.[2]  The SSA is developing its own replacement for the *D.O.T.*, the "Occupational Information System," which is scheduled for initial complete release in 2019.  *Id*.  ALJs are still required to take administrative notice of the *D.O.T.*, 20 C.F.R. § 404.1566(d)(1), but may also obtain the opinions of vocational experts, 20 C.F.R. § 404.1566(3).  In addition, the Commissioner directs her adjudicators to identify and obtain a reasonable explanation for any conflicts between a vocational expert's opinions and information included in the *D.O.T.*, but does not require explanations for conflicts between vocational-expert or *D.O.T.* evidence and evidence from other sources, such as the *O\*NET*.  S.S.R. 00-4p.

      Ball did not challenge the skill levels of the vocational expert's three jobs at the hearing.  However, with the ALJ's leave, Ball later submitted a memo highlighting and attaching the *O\*NET*'s contrary skill ratings for the three jobs.  The ALJ ignored this evidence.  Although the SSA's regulations and rulings did not specifically require the ALJ to obtain an explanation for conflicts between the vocational expert's testimony and non-*D.O.T.* evidence, the *O\*NET*'s skill-level ratings that Ball submitted constituted significant evidence that was contrary to the vocational expert's testimony which, if credited, would eliminate at least two of the three jobs identified by the vocational expert and call into question the validity of the ALJ's step-five determination.  Therefore, the evidence of the more recent *O\*NET* skill ratings was significant enough that the ALJ was required to have specifically addressed it, explaining his resolution of the conflict with the vocational expert's skill ratings.  The ALJ should address this shortcoming on remand.

---

      [2] Social Security Administration, *Occupational Information System Project*, https://www.ssa.gov/disabilityresearch/occupational_info_systems.html; Social Security Administration, *OIS Project Frequently Asked Questions*, https://www.ssa.gov/disabilityresearch/ois_project_faqs.html.

## IV.  Conclusion

The ALJ's decision is sustainable in several respects, but likewise contains several errors requiring remand.  The Commissioner should be instructed to: (1) reevaluate the probativeness of Ball's activities of daily living on the severity of her functional limitations and on her capacity to perform the demands of substantial gainful activity and articulate a specific activity-to-work-function explanation of the results of that reevaluation; (2) articulate a medical basis for finding that Ball's treatments were conservative or routine and not what would be medically expected if her symptoms and limitations were disabling; and (3) resolve, with adequate explanation, the inconsistency between the skill-level ratings provided by the vocational expert and the *O\*NET* for the three jobs identified by the vocational expert.

Either party may object to this report and recommendation within fourteen days after being served with a copy.  28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2).  Failure to file an objection may result in waiver of the right to appeal.

Date:  1/16/2018

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

All ECF-registered counsel of record via email.